778 F.2d 1086
 1985-2 Trade Cases 66,671
 LIMECO, INC. On Its Own Behalf and On Behalf of All Others
Similarly Situated, Plaintiff-Appellant,
v.
The DIVISION OF LIME OF the MISSISSIPPI DEPARTMENT OF
AGRICULTURE & COMMERCE and Jim Buck Ross, Commissioner of
Agriculture & Commerce of the State of Mississippi, and His
Successors In Office, Defendants-Appellees.
 No. 85-4107.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 18, 1985.
 
 Satterfield & Allred, Michael Farrell and James D. Holland, Jackson, Miss., for plaintiff-appellant.
 Robert E. Sanders, Jackson, Miss., Hopkins, Logan & Vaughn, Alben N. Hopkins and Lisa P. Dodson, Gulfport, Miss., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Mississippi; L.T. Senter, Jr., District Judge, Presiding.
 Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.
 OPINION
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 The State of Mississippi entered the lime business in 1942. A privately owned competitor sued The Division of Lime of the Mississippi Department of Agriculture & Commerce, claiming that it was guilty of monopoly and attempted monopolization contrary to Section 2 of the Sherman Act. After eight days of trial, the district court granted a directed verdict in favor of the defendants, concluding that the Division's activities were not part of interstate commerce and that the Sherman Act therefore did not apply. We are persuaded that the defendants' activities constituted state action within the meaning of Parker v. Brown, 317 U.S. 341, 63 S.Ct 307, 87 L.Ed. 315 (1943). We affirm the dismissal for that reason and do not reach the interstate commerce question.
 
 I.
 
 2
 In 1942 the Mississippi Legislature created a new division within its Department of Agriculture & Commerce, called The Division of Lime. See Miss.Code Ann. Secs. 69-1-31 to 69-1-41 (1972 & Supp.1985). The Division of Lime was placed under the control of a commissioner, who is an elected public officer of the state. The legislature required the commissioner to operate certain lime plants and to supply the crushed limestone to farmers in Mississippi at actual cost. The Division was given the power to acquire limestone deposits and to equip and maintain the lime plants. The proceeds from sales were required to be deposited in a separate fund, from which plant managers could obtain money to meet labor and other operating costs for the plants. The Lime Division is financed through appropriations from the state and its plants are state owned. All funds in excess of $75,000 are each year paid into the state treasury, with the Division of Lime in turn depending upon the legislature for annual appropriations. Its personnel are paid by state check, and they participate in the state's retirement and benefit program.
 
 
 3
 The Division now operates plants at West Point, Macon, and Waynesboro, Mississippi. The plant at Waynesboro has been in continuous operation since 1945. Limeco, the challenging competitor and plaintiff here, opened a plant in 1978, approximately one mile from the Division's West Point facility.
 
 
 4
 Limeco urges this court to create a "commercial exception" to the doctrine of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), arguing that when a state acts as a competitor in a commercial activity, the state action exemption does not apply. Pointing to City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 5 L.Ed.2d 364 (1978), and its progeny, Limeco finds a distinction between governmental activities and marketplace participation by governmental entities. We are unpersuaded.
 
 II.
 
 5
 Limeco's argument confuses quite distinct concepts and quite distinct lines of cases. Courts have struggled to determine exactly when a state has so regulated a particular industry that private firms subject to that regulation ought to enjoy antitrust immunity. Courts have also struggled to determine the limits of the antitrust liability of municipalities. These efforts are not relevant here. Parker v. Brown held that Congress did not intend the Sherman Act to apply to the states. The Lime Division of the Department of Agriculture is, indisputably, an enterprise undertaken by the State of Mississippi. As such, it is not subject to the Sherman Act. The Parker Court explained:
 
 
 6
 In a dual system of government in which, under the Constitution, the states are sovereign, save only as Congress may constitutionally subtract from their authority, an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress.
 
 
 7
 317 U.S. at 351, 63 S.Ct. at 313. Limeco's proffered "exception" to the Parker doctrine would have to rest on a congressional purpose to extend the Sherman Act to certain state functions but not to others. Limeco points to no basis for such a reading of the statute and we know of none. The district court's dismissal of this action is AFFIRMED.